# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15-cv-00059-NBB-JMV |
| ) | |
| LEFLORE COUNTY, ) | |
| MISSISSIPPI, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## SETTLEMENT AGREEMENT AND ORDER BETWEEN
## THE UNITED STATES AND LEFLORE COUNTY, MISSISSIPPI

Plaintiff the United States and defendant Leflore County, Mississippi, have reached agreement regarding the United States' security and facility conditions claims in this matter and jointly request that this Court enter this settlement agreement (this "Agreement") as its order.

## INTRODUCTION

1. The purpose of this Settlement Agreement ("Agreement") is to remedy findings made by the Department of Justice of constitutional violations concerning security and facility conditions identified by the United States in the findings letter issued by the United States on March 31, 2011. Leflore County Juvenile Detention Center ("LCJDC" or "the Facility") is an integral part of the public safety system in Leflore County, Mississippi ("Leflore County"). Through the provisions of this Agreement, the Parties seek to ensure that the conditions in the Facility respect the rights of Youth confined there, encourage rehabilitation and improve the likelihood that Youth will succeed upon release. By ensuring that the conditions in LCJDC are in compliance with the applicable requirements of the United States Constitution, Leflore County will also provide for the safety of staff and promote public safety in the community.

2. On March 31, 2011, the United States issued an investigative findings letter ("Findings Letter") pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §1997, and the pattern or practice provision of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. §14141 ("Section 14141"). The Findings Letter concluded that certain conditions at LCJDC violated the constitutional and federal statutory rights of Youth housed there. The Findings Letter is attached.

3. The parties to this Agreement are the United States, represented by the Department of Justice ("DOJ"), and Leflore County, represented by the Leflore County Board of

Supervisors and each of their respective agents, employees, designees, and successors in office (consistent with Miss. Code Ann. §§ 19-3-40 and 25-1-47), in their official capacities (collectively, "Parties"). The Parties expressly agree that the director of the LCJDC shall report directly to the Leflore County Board of Supervisors.

4. This Agreement is entered into between the Parties to address conditions of confinement at the Facility. This Agreement shall be filed in the United States District Court, Northern District of Mississippi.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1345; and 42 U.S.C. §14141. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

6. Leflore County is responsible for ensuring that LCJDC takes all necessary and appropriate actions to comply with all provisions contained in this Agreement which are the responsibility of LCJDC. Leflore County is responsible for providing or obtaining all support, including financial resources, necessary to fulfill its obligations under this Agreement, provided, however, that nothing in this Agreement shall require Leflore County to continue to operate the LCJDC or otherwise comply with this Agreement after termination of this Agreement as provided in Section 111.

7. The United States agrees that this Agreement resolves the Section 14141 and CRIPA investigation concerning security and facility conditions conducted by the DOJ, addresses the corrective measures concerning security and facility conditions set forth by the DOJ in its Findings Letter, and represents an adequate voluntary effort by Leflore County to address the alleged constitutional violations described in the Findings Letter. *See* 42 U.S.C. §§ 1997b(a)(2)(B) & 1997g. Through the provisions of this Agreement, the Parties seek to ensure that the security and facility conditions at LCJDC comply with the rights of Youth confined there, and are consistent with generally accepted juvenile justice standards. This Agreement does not address the United States' findings regarding education services at the LCJDC school and does not require action with respect to such education services except as described in Paragraph 93 of this Agreement.

8. For purposes of this civil action only, and in order to settle this matter, the Parties stipulate that this Agreement complies in all respects with the provisions of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a), and may serve as the factual and legal basis of a Court order issued under those provisions. This stipulation and Agreement is limited to the instant civil action and does not apply to any other lawsuit brought by past, current or future juveniles with respect to LCJDF. No person or entity is intended to or shall be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action, and accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement. This Agreement is not intended to impair or expand the right of any person or organization to seek relief against Leflore County, its employees, or agents for their past or future conduct; accordingly, this Agreement does not alter any legal standards governing any such claims, including those under any federal or Mississippi law.

9. The Court finds, without a full hearing on the merits, on the basis of the United States' Complaint and the attached Findings Letter, that all of the prospective relief in this Agreement is narrowly drawn and extends no further than is necessary to correct the violations of the federal rights concerning security and facility conditions as described in the attached Findings Letter and incorporated into this Agreement. The provisions of this Agreement are the least intrusive means necessary to correct the findings of violations of the federal rights concerning security and facility conditions at LCJDC.

10. This Agreement, and attached Findings Letter, shall constitute the entire integrated agreement of the Parties. No prior contemporaneous communications, oral or written, or prior drafts shall be relevant or admissible for purposes of determining the meaning of any provisions here in this litigation or in any other proceeding.

11. Nothing in this Agreement shall prevent Leflore County from modifying or closing LCJDC at any time consistent with Paragraph 111(e) of this Agreement.

## DEFINITIONS

12. "DOJ" or "United States" means the United States Department of Justice, which represents the United States in this matter.

13. "Effective Date" means the date the Agreement is signed by the Court.

14. "Isolation" means confining a Youth in a room by himself or herself in any area of LCJDC for current and disruptive behavior that is dangerous to the Youth or others.

15. "LCJDC" or the "Facility" means the Leflore County Juvenile Detention Center, currently located on 307 West Market Street, Greenwood, MS 38930-4330, as well as any facility that is built, leased, or otherwise used to replace or supplement LCJDC.

16. "Qualified Medical Professional" means a licensed physician, licensed physician assistant, licensed nurse practitioner, or a registered nurse who is, at the relevant time, currently licensed by the State of Mississippi to deliver those health care services he or she has undertaken to provide.

17. "Qualified Mental Health Professional" or "QMHP" means an individual who, at the relevant time, has a minimum of a masters-level education and training in psychiatry, psychology, counseling, social work or psychiatric nursing and who has either a Mississippi professional license or a Mississippi Department of Mental Health credential as a mental health therapist.

18. "Restraint" means the use of mechanical restraints (e.g., handcuffs, belly chains, leg shackles) to protect a Youth from harming himself, herself or others. The term "Restraint" does not include use of handcuffs or shackles for and during transport or during temporary detention of a Youth outside the Facility before or after transport.

19. "Serious Incident" means alleged use of force; alleged staff misconduct; alleged inappropriate staff relationships with Youth; alleged sexual misconduct between Youth;

alleged Youth-on-Youth violence that results in broken bones, or lacerations, or other injuries that require medical attention; and all serious Youth attempts (whether completed or not) at serious self-harm.

20. "Serious Suicide Attempt" means a suicide attempt that is either potentially life-threatening or that requires medical treatment for serious harm.

21. "Staff" means all individuals employed by Leflore County at the LCJDC.

22. "Suicide Precautions" means any level of watch, observation, medical treatment or other measures to prevent or mitigate the risk of self-harm to Youth confined in the LCJDC.

23. "Train" means to instruct in the skills addressed to a level that the trainee has the demonstrated proficiency to implement those skills as, and when, called for in the training. "Trained" means to have achieved such proficiency.

24. "Use of Force" or "Force" means any physical contact (e.g. manual holds or take-downs) initiated by a staff person that intentionally restricts or compels the movement of a Youth to protect a Youth from harming himself, herself, or others.

25. "Youth" shall be construed broadly to refer to one or more individuals detained at, or otherwise housed, in the custody of, or confined at LCJDC.

## SUBSTANTIVE REMEDIAL MEASURES

## I. POLICIES AND PROCEDURES

26. **Policy and Procedure Review**. Within the time periods set for Section 27 of this Agreement, all existing policies and procedures shall be reviewed and/or revised by Leflore County to ensure compliance with the substantive terms of this Agreement. Where LCJDC does not have a policy in place to comply with a substantive term of this Agreement, LCJDC shall generate such policy. The initial policy and procedures review shall be initiated by LCJDC officials and shall be subject to review by the DOJ.

27. **Schedule for Policy and Procedure Review**. LCJDC shall complete its policy review and revision within six (6) months of the Effective Date, and shall also complete the implementation of procedures regarding behavior management within six (6) months of the Effective Date. To accomplish this goal, LCJDC shall adhere to the schedule contained in each substantive provision below. Within thirty (30) days after LCJDC completes its initial revision of all policies, LCJDC shall submit the revised policies and procedures to the DOJ for review and approval. As soon as practicable, but in any event, not later than thirty (30) days after the DOJ receives LCJDC's submission, the DOJ shall submit to LCJDC any suggested revisions to the proposed policies. In the event that the DOJ does not submit to LCJDC proposed revisions to any particular policy within such thirty (30) day period, the policy, as submitted, shall be deemed accepted by the DOJ. Within thirty (30) days after receiving the proposed revisions from the DOJ, LCJDC shall either (a) revise the policies to incorporate the DOJ's revisions and resubmit the revised procedures to the DOJ for review and approval, such approval not to be unreasonably

withheld or delayed or (b) shall submit to the DOJ alternatives to policies not accepted by the DOJ. In the event that the United States asserts that policies, procedures, or other written documents are not in compliance with the terms of this Agreement, or, if LCJDC asserts that the DOJ's objections are not well-founded, the Parties will confer on the matter for up to thirty (30) days. If, after conferring for thirty (30) days, the Parties are unable to reach an agreement, either Party may submit a Motion to the Court outlining the disagreement and seeking the Court's resolution of the disagreement. This review process shall continue until all policies and procedures have been approved by the DOJ or, in lieu of approval by the DOJ, by the Court.

28. **Policy Implementation**. No later than three (3) months after the DOJ's final approval of each policy, LCJDC shall formally adopt and begin implementing the policies and modify all orders, job descriptions, training materials, and performance evaluation instruments in a manner consistent with the revised policies and procedures. Following adoption and implementation, LCJDC shall annually review each policy and procedure and revise as necessary. Any revisions to the policies and procedures shall be submitted to the DOJ for review and approval in the manner provided in Section 27 above. Unless otherwise stated, all new or revised policies and procedures shall be implemented within one year of the Effective Date.

## II. PROTECTION FROM HARM

LCJDC shall provide Youth in the Facility with reasonably safe conditions of confinement, by fulfilling the requirements set out below.

### A. Intake

The provisions below are designed to create a thorough intake screening and evaluation process, which allows detention Staff to gain essential information regarding incoming Youth and provides those same Youth with valuable information regarding the Facility's operations. These provisions are also consistent with Mississippi state law, which requires that Youth undergo a health screening upon admission to a juvenile detention center, within one hour or as soon thereafter as reasonably possible, in order to obtain information about the juvenile's mental health, suicide risk, alcohol and other drug use and abuse, physical health, aggressive behavior, family relations, peer relations, social skills, educational status, and vocational status. Miss. Code Ann. §43-21-321(1)-(4).

29. **Intake Screening**. Within one hour, or as soon as reasonably possible but, in any event, within no more than three (3) hours of admission, Staff shall: administer the Massachusetts Youth Screening Instrument-2nd version ("MAYSI-2") screening tool to identify each Youth's possible mental health needs; evaluate each Youth's medical and mental health history; and evaluate Youth for potential suicide risk. LCJDC shall evaluate each Youth for appropriate grade placement on the next school day following the Youth's intake.

30. **Orientation**. Within three (3) hours of admission or as soon as reasonably possible, but, in any event, within eight (8) hours after admission, each Youth must receive a written

and/or video orientation. The orientation shall include a clear explanation of the following:

    **a.**    Rules Youth must follow while at LCJDC and the consequences of failing to follow the rules;

    **b.**    How to obtain medical and mental health care;

    **c.**    How to use the LCJDC grievance system;

    **d.**    How to report abuse, including information about Youth's rights and responsibilities to be protected from retaliation for reporting allegations of abuse; and

    **e.**    Information pertinent to participation in LCJDC's school and other daily programs.

31. **Posting of Orientation Information**. Short summaries of the information described above shall be conspicuously posted in the living areas and classroom.

32. **Policies and Procedures**. Within sixty (60) days after the Effective Date, LCJDC shall revise its intake policies and procedures to establish a consistent, orderly admissions intake system that is conducive to: gathering necessary information about Youth; disseminating information to Staff providing services and care for Youth; and maintaining Youth safety. The policy shall address at least the following issues:

    **a.**    Mental health;

    **b.**    Medical history;

    **c.**    Education;

    **d.**    Classification; and

    **e.**    Orientation.

Within sixty (60) days after the Effective Date, LCJDC shall revise any intake screening tools consistent with the intake policy and Mississippi law, Miss. Code Ann. § 43-21-321, and shall submit the revised tool to the DOJ for approval.

33. **Quality Assurance**. The Facility director shall review the MAYSI-2 screenings each month to ensure that all screenings were conducted in accordance with the terms of this Agreement. Each month, the Facility director shall also ensure that each Youth admitted has undergone orientation in accordance with the terms of this Agreement.

**B.**    **Classification**

The provisions below are designed to create a classification and housing system that is consistent with the Constitutional requirement that Youth be provided a reasonably safe

environment.  Under the classification and housing practices described below, the facility will properly consider such factors as the Youth's charge offense, history of violence and escape, vulnerability to victimization, gang membership or affiliation, health and mental health concerns, and institutional history.

34.    **Housing and Supervision**.  Within twenty-four (24) hours of admission to the Facility, all Youth shall be classified and housed in accordance with this Agreement and LCJDC's revised policies and procedures.

35.    **Performance Measure**.  On the final day of each month that is not a Saturday, Sunday or a legal holiday, the Facility director shall review all classifications and provide feedback to Staff to ensure that: all Youth are classified within twenty-four (24) hours of arrival to the Facility; all Youth are placed in housing units consistent with their risk level; and each eligible Youth is reclassified within appropriate timeframes and re-housed accordingly.  The Facility director shall document the results of this review each month.

36.    **Policies and Procedures**.  Within forty-five (45) days of the Effective Date, LCJDC shall develop policies and procedures, including an instrument to be used during intake, regarding a housing classification system.  The policy shall specify the procedures for initial and re-classification, housing assignments, and supervision procedures flowing from the assessment of risk.  The policy should include timelines for classification and the events or incidents that trigger reclassification.  The policy shall provide for supervision of children according to their classification pursuant to the policy.  LCJDC's classification policy shall address at least the following:

   **a.**    Separation of older from younger residents;

   **b.**    Separation of males from females;

   **c.**    The juvenile's history of delinquency and charge offense;

   **d.**    Vulnerability to victimization;

   **e.**    Gang membership or affiliation;

   **f.**    Separation of violent from non-violent Youth;

   **g.**    Maturity level of Youth involved;

   **h.**    Presence of mental or physical disabilities;

   **i.**    Suicide risk;

   **j.**    Specific information about Youths who need to be separated from each other; and

   **k.**    Plans to protect the safety of Youth who have been victimized at a facility or who have concerns about their safety.

37. **Quality Assurance**. Each month, LCJDC shall aggregate all classification data and ensure that the policies above are followed for each Youth admitted to the Facility. Monthly statistics shall be assembled to allow assessment changes over time. Each monthly report shall include:

    a.    Each Youth's initial classification; the date of admission; the date and time each Youth received his or her classification status; any reclassification; and other subsequent housing assignments;

    b.    Trends and/or patterns regarding the classification data (e.g., frequency of reclassifications and assaults);

    c.    Specific interventions that have been or will be implemented in response to the underlying conditions that may have contributed to problematic patterns or trends; and

    d.    Status reports on the effectiveness of interventions undertaken in response to identified trends from previous months.

**C.**     **Use of Force**

    Consistent with Constitutional requirements that detained Youth should be protected from harm and from the serious risk of harm, these provisions are designed to create a comprehensive use of force policy which shall be implemented by Staff who have been properly trained, so that Youth are not subjected to such harm from unwarranted or excessive force by the Staff at the Facility.

38. **Policies and Procedures on Use of Force and Restraints, Generally**. Within thirty (30) days of the Effective Date, LCJDC shall adopt a policy for the Use of Force and Restraints, which shall at least:

    a.    Ensure that Staff use the least amount of Force appropriate to the risk posed by the Youth to stabilize the situation and protect the safety of the involved Youth and others. As soon as the Youth regains self-control, Staff shall temper their use of physical Force and stop using mechanical Restraints with respect to the Youth involved.

    b.    Limit Use of Force or Restraint to exceptional situations where the Youth is currently physically violent, poses an immediate danger to self or others, and where LCJDC has attempted and exhausted a graduated set of interventions that avoid or minimize the Use of Force or Restraints and permit only the least restrictive measures to prevent physical harm to the Youth or others;

    c.    Prohibit the Use of Force or Restraints as punishment or in retaliation for verbal disobedience;

    d.    Prohibit the use of unapproved forms of Force or Restraint;

**e.**     Require the prompt documentation and reporting of all Uses of Force or Restraint;

**f.**     Require that any attempt at non-physical alternatives be documented in a Youth's file;

**g.**     Ensure that Staff are held accountable for excessive Force or inappropriate Restraint through a disciplinary process;

**h.**     Ensure that Youth who have been subjected to Force or Restraint are evaluated by Qualified Medical Personnel or transported to a medical emergency facility promptly following the incident if the Youth claims an injury or requests medical attention, or if a reasonable person would believe the Youth has been injured;

**i.**     Require investigation and written documentation of all incidents involving violence, all Uses of Force, use of Restraint and all allegations of abuse;

**j.**     Ensure that no Youth are Restrained to fixed objects;

**k.**     Include verbal and non-verbal de-escalation techniques and a continuum of Restraint techniques;

**l.**     Provide guidance for Staff on using safe alternatives if the authorized techniques are impractical given the circumstances and a description of the manner in which Force or Restraints for control shall be imposed, supervised, terminated, and documented;

**m.**     Provide that Staff follow a graduated set of interventions that avoid the Use of Force or Restraints, employ a range of interventions or actions before using Force or Restraints, permit only the least restrictive measures to prevent physical harm to the Youth or others, and permit Use of Force or Restraints for the minimum amount of time necessary to bring the situation under control; and

**n.**     Provide that only Staff specifically trained in the application of Force and Restraints are permitted to use such techniques or devices, and that Staff only use techniques or devices approved by policy.

39.     **Training**.  Staff shall receive regular periodic training in conflict management, de-escalation of confrontations, crisis intervention, management of assaultive behavior, minimizing trauma involved in the Use of Force, and the Facility's continuum of methods of control.  In addition, Staff shall receive annual training on situations in which Use of Force or Restraints is or is not justified, permitted methods of Force and Restraints, appropriate techniques for application of Force and Restraints, and guidance to Staff in deciding what levels of Force and Restraints to use if that becomes necessary.

40.     **Elimination of Unsafe Restraint Practices**.  No later than the Effective Date, LCJDC shall not shackle or restrain Youth to their beds as a disciplinary measure.

41. **Quality Assurance**. Each month, not later than the tenth (10th) day of the next month, the Facility director shall review all incidents involving use of Force and Restraint to ensure that all Uses of Force and Restraint and reports on Uses of Force and Restraint were done in accordance with this Agreement. The Facility director shall also ensure that appropriate sanctions are imposed on any Staff member who fails to comply with Use of Force policies.

### D. Behavior Management

The behavior management provisions below are designed to encourage Youth compliance with facility rules by providing positive incentives, and to provide staff with a variety of disciplinary options in lieu of Isolation.

42. **Behavioral Management**. Within six (6) months of the Effective Date, LCJDC shall implement a behavior management system that provides positive incentives for changing Youth behavior, and that outlines prohibited behaviors and the consequences for those behaviors. These incentives shall be documented in the Youth's file following each use and reviewed by shift supervisors to determine the frequency and outcome of any incentive. The behavior management system shall also address the use of Isolation as a response to Youth behavior.

43. **Distinction Between Major and Minor Rule Violations**. LCJDC shall consult with outside technical assistance (*see infra* ¶ 102) on developing and incorporating into the behavior management system a distinction between major and minor rule violations. Youth accused of major rule violations shall be accorded the full due process protections set forth below. Youth accused of minor rule violations shall receive a written notice of the alleged violation as soon as reasonably practicable following the incident. The notice shall contain any information that is the basis for LCJDC's conclusion that the violation has occurred. The behavior management system shall include an informal means for Youth accused of a minor rule violation to contest the violation finding.

44. **Quality Assurance**. Each month, the Facility director shall examine 20% of Youth files to ensure that all Staff are using the behavior management tool in accordance with the terms of this Agreement. This review shall be documented and available for review.

### E. Isolation

The following provisions will ensure that Isolation is used only when Youth pose an immediate threat to themselves or others and that Isolation is not used when a less restrictive method would be more effective. These provisions are also designed to discontinue over-reliance on Isolation by implementing a robust behavior management program that both rewards Youth for compliant behavior, and sanctions Youth for violating the facility's rules.

45. **Interim Measure Regarding the Use of Disciplinary Isolation**. LCJDC will review the effectiveness of its use of disciplinary Isolation, and will consult with DOJ and technical assistance providers about ways to move toward the elimination of Isolation for disciplinary reasons. A revised policy and procedure on disciplinary Isolation will be promulgated within three (3) months of the Effective Date, with the expectation that

LCJDC will cease using disciplinary Isolation within six (6) months of the Effective Date. In the interim, disciplinary Isolation should only be used as a sanction for a major rule violation, and each Youth should receive a due process hearing prior to being sent to disciplinary Isolation. During this interim period, if disciplinary Isolation is used, LDJDC shall prohibit periods of disciplinary Isolation longer than twenty-four (24) hours, except in extraordinary circumstances and with the express written authorization of the Facility director. Disciplinary Isolation shall be limited to situations when less severe disciplinary measures have proven ineffective.

46. **Policies and Procedures**. Within six (6) months of the Effective Date, LCJDC shall revise its policies and procedures consistent with the following principles for the use of Isolation:

    **a.**     Isolation is only permitted when a Youth's behavior threatens imminent harm to the Youth or others. LCJDC will no longer use Isolation as a form of discipline or punishment.

    **b.**     Prior to using Isolation, Staff shall utilize less restrictive techniques, including talking with Youth to de-escalate the situation and bringing in Staff, QMHPs, family members or other Youth to talk with the Youth. Prior to using Isolation or immediately after placing a Youth in Isolation, Staff shall explain to the Youth the reasons for the Isolation, and the fact that he or she will be released upon regaining self-control.

    **c.**     Youth are in Isolation only for the amount of time necessary for the Youth to regain self-control and no longer pose a threat. As soon as the Youth's behavior ceases to threaten imminent harm to self or others or serious destruction of property, Staff shall release him or her back to routine detention, school or other programming.

    **d.**     Staff shall notify the unit supervisor as soon as a Youth is placed in Isolation.

    **e.**     During the time that a Youth is in Isolation, Staff shall provide one-on-one crisis intervention and observation. The Staff member should be either in the sleeping room with the Youth or directly outside the sleeping room during the entire period of Isolation providing observation of the Youth and interaction as appropriate. Staff shall document their observations on a time sheet maintained beside the Youth's room. The observing Staff member shall document the time of the observation and shall initial the time sheet beside the time of the observation.

    **f.**     A Qualified Medical Professional or health-trained Staff shall directly monitor any Youth in Isolation at least every fifteen (15) minutes.

    **g.**     Youth shall not be held in Isolation for a continuous period longer than one (1) hour. If the LCJDC director determines that a Youth still requires Isolation after one (1) hour, a QMHP or the LCJDC director shall arrange for the Youth to be transported to a local mental health facility or hospital. If transport to a local mental health facility or hospital is not possible due to unavailability of mental

health or medical services, LCJDC shall continue to monitor the Youth under Paragraphs 46(e) and 46(f) until such servicers are available or the Youth regains control and can be released from Isolation.

**h.** If at any time during Isolation a Qualified Medical Professional or QMHP, believes the level of crisis service needed is not available at LCJDC, the Youth shall be transported to a location where those services can be obtained (*e.g.,* local mental health treatment facility or hospital).

**i.** Youth in Isolation have reasonable access to water, toilet facilities, and hygiene supplies.

**j.** All uses of Isolation shall require written justification and authorization by a shift supervisor. All instances of Isolation, all justifications for the use of Isolation, and all authorizations, shall be noted in the Youth's file.

47. **Facility Director Notification of Isolation**. The Facility director shall be notified of all periods of Isolation as follows:

**a.** For all periods of cumulative Isolation extending beyond two hours within a 24-hour period, notification shall occur within 30 minutes of the cumulative Isolation extending beyond two hours; and

**b.** For all periods of Isolation wherein Youth are isolated three or more times within one week, regardless of the length of time for each Isolation period, notification shall occur within 30 minutes of the third incident of Isolation.

**c.** Notification to the Facility director shall include the circumstances and facts related to the Youth's ongoing imminent threat to self or others and the less severe measures that have been attempted and proven ineffective. The Facility director shall refer the Youth to a QMHP for evaluation and treatment.

48. **Services for Youth in Isolation**. Youth in Isolation shall continue to receive meals, showers, and educational and recreational services. In addition, Youth in Isolation shall be counseled by a qualified mental health professional and visited by a shift supervisor on a daily basis. Compliance with this provision shall be documented in writing and maintained in the Youth's file.

49. **Data Gathering Regarding Youth in Isolation**. For each instance of Isolation, Staff shall log the length of time the Youth remained in Isolation, the reason for the Isolation, and Youth's behavior while in Isolation. The data shall be maintained in the Youth's file and shall be reviewed in Quality Assurance assessments.

50. **Quality Assurance**. Each month, the Facility Director shall aggregate and analyze all data on the use of Isolation and provide feedback to Staff as frequently as needed to ensure that all Isolation episodes meet the requirements of this subsection. Such review, and the monthly accuracy rate, shall be documented. Monthly statistics shall be assembled to allow assessment of changes over time. The Facility director shall review

all Isolation data and provide monthly feedback to Staff to ensure that all Isolation procedures are properly followed.

**F.     Suicide Prevention and Mental Health Care**

These provisions are designed to ensure compliance with Constitutional requirements for adequate mental health treatment and suicide prevention by adopting and implementing treatment and strategies to protect Youth susceptible to suicidal ideation from self-harm. These provisions are consistent with Miss. Code Ann. §43-21-321(6)(m)-(n), which require that Youth have access to counseling and that Youth be referred to other counseling services "when necessary," including for mental health services and crisis intervention.

51.     **Tools.**  Within forty-five (45) days of the Effective Date, LCJDC shall ensure security Staff posts are equipped with readily available, safely secured, suicide cut-down tools.

52.     **Reporting**.   All Staff, including administrative, medical, and direct care Staff or contractors, will report all incidents of self-harm by Youth to the Facility director immediately upon discovery.

53.     **Suicide Risk Assessments at Admission**.  After intake and admission to the Facility, LCJDC shall ensure that, within 24 hours, any Youth expressing suicidal intent or otherwise showing symptoms of suicide is assessed by a QMHP using an appropriate, formalized suicide risk assessment instrument.

54.      **Notice to QMHP and Facility Director**.  Direct care Staff shall immediately notify a QMHP any time a Youth is placed on Suicide Precautions.  Direct care Staff shall provide the QMHP with all relevant information related to the Youth's placement on Suicide Precautions.  If a Youth is placed on Suicide Precautions outside of business hours, the Facility director will be notified within 30 minutes, and the Facility director will arrange care consistent with this provision through a mental health facility or QMHP.

55.     **Orders**.  LCJDC shall ensure that Staff write orders setting forth the conditions under which Youth placed on Suicide Precautions are held, including allowable clothing, property, and utensils. These conditions shall be altered only on the written instruction of a QMHP, except under emergency circumstances.

56.     **Supervision of Youth on Suicide Precautions**.  LCJDC shall ensure that Staff search Youth placed on Suicide Precautions.  Staff shall monitor Youth on Suicide Precautions one-on-one on a continuous basis or transfer the Youth to an appropriate mental health treatment facility or hospital.  Staff shall document their visual verification of the Youth's welfare accurately and completely.  A supervisor shall conduct and document a review of all documents related to this provision before the end of the shift during which it occurred to ensure compliance with policy and this Agreement.

57.     **Isolation of Youth on Suicide Precautions**.  Youth on Suicide Precautions shall not be placed in Isolation unless specifically authorized by a QMHP.  Any such Isolation and its justification shall be thoroughly documented in the accompanying incident report, a copy of which shall be maintained in the Youth's file.

58. **QMHP Assessment, Reassessment and Monitoring of Youth on Suicide Precautions**. Any Youth placed on Suicide Precautions shall be evaluated by a QMHP no later than one (1) hour after the Youth is placed on Suicide Precautions. In this assessment, the QMHP shall determine the extent of the risk of suicide, write any appropriate orders, and regularly monitor the Youth. The QMHP shall regularly, but no less than daily, reassess Youth on Suicide Precautions to determine whether the level of precaution or supervision should be raised or lowered, and shall record these reassessments in the Youth's medical chart. Only a QMHP may raise, lower, or terminate a Youth's Suicide Precaution level or status. Following each daily assessment, the QMHP shall provide direct care Staff with relevant information regarding a Youth on Suicide Precautions that affects the direct care Staff's duties and responsibilities for supervising the Youth, including at least: known sources of stress for the potentially suicidal Youth; the specific risks posed; and coping mechanisms or activities that may mitigate the risk of harm. If a Youth is placed on Suicide Precautions outside of business hours or cannot be seen by a QMHP on site within one (1) hour, the Facility director will be notified within 30 minutes, and the Facility director will arrange care consistent with this provision through a mental health facility, QMHP or hospital emergency room.

59. **Response to Suicide Attempts**. LCJDC shall develop and implement a plan for responding to, and intervening in, suicide attempts, including:

   a. Ensuring that Staff members notify emergency medical personnel immediately after the discovery of a life-threatening emergency involving self-harm;

   b. Ensuring that Staff immediately transfer to a hospital, local mental health center or other appropriate setting any Youth who attempts suicide; and

   c. Ensuring annual mock drills for suicide attempts and annual competency-based instruction in the use of emergency equipment for Staff.

   This plan shall be submitted, reviewed, adopted and implemented in accordance with the provisions of Sections 27 and 28 above.

60. **Data Management**. All suicide attempts shall be recorded in the classification system to ensure that intake Staff will be aware of past suicide attempts if a Youth with a history of suicidal ideations or attempts is readmitted to the Facility.

61. **Mortality and Morbidity Review**. LCJDC shall ensure that all relevant facts and circumstances surrounding Serious Suicide Attempts and completed suicides are reviewed by a multidisciplinary team. This team shall identify any areas in which Staff performance should improve or Facility procedures should be adjusted to improve the ability to protect Youth from self-harm. LCJDC and Leflore County may seek assistance of community providers in establishing and operating the multidisciplinary team. All reviews shall be documented and shall include the team's findings, concerns, recommendations and remedial actions.

62. **Suicide Prevention Policies and Procedures**. Within three(3) months of the Effective Date and consistent with Sections 27 and 28 above, LCJDC shall develop comprehensive

policies and procedures regarding suicide prevention and the appropriate management of suicidal Youth. The policy shall address, at least:

**a.**      Intake screening for suicide risk;

**b.**      Procedures for initiating and terminating precautions;

**c.**      Communication between direct care and mental health Staff regarding Youth on precautions;

**d.**      Suicide risk assessment by the QMHP;

**e.**      Housing and supervision requirements, including minimal intervals of supervision and documentation;

**f.**      Interdisciplinary reviews of all Serious Suicide Attempts or completed suicides;

**g.**      Multiple levels of precautions, each with increasing levels of protection;

**h.**      Requirements for all annual in-service training; and

**i.**      Requirements for mortality and morbidity review.

This policy shall be submitted, reviewed, adopted and implemented in accordance with the provisions of Sections 27 and 28 above.

63. **Suicide Prevention Quality Assurance**. Each month, the Facility director shall aggregate and analyze the data regarding self-harm, suicide attempts, and successful suicides. Monthly statistics shall be assembled to allow assessment of changes over time. The Facility director shall review all data regarding self-harm within 24 hours after it is reported and shall ensure that the provisions of this Agreement, and LCJDC policies and procedures, are followed during every incident. Such review shall be documented.

64. **Mental Health Services Following Intake**. LCJDC shall transport all Youth determined at intake to have a mental health diagnosis to a mental health treatment facility, within twenty-four (24) hours of intake to be evaluated by a QMHP. If the QMHP determines that the Youth requires treatment that is not available at LCJDC, Leflore County shall take all reasonable actions to ensure that the Youth is diverted, in a timely manner, to a setting where the Youth's needs can be met. If the Youth remains at LCJDC, Leflore County will work with the QMHP to develop and implement a treatment plan for the Youth.

65. **Access to a Mental Health Professional During Detention**. LCJDC shall provide timely access to a QMHP when a Youth's symptoms of mental illness indicate a need for such care.

### G.    Due Process

These provisions are designed to ensure that each Youth is provided with Constitutionally adequate due process protections prior to the imposition of punishment, and to ensure that Youth are provided a grievance system that allows them to confidentially express their concerns to the Facility Director where the grievance involves the Grievance Coordinator or to a Grievance Coordinator designated under Section 69 below. .

66.    **Due Process, Generally**.  LCJDC shall ensure that Youth subjected to discipline are afforded due process protections.  To facilitate this requirement, Staff shall establish a disciplinary system that includes at least notification to all Youth of: the Facility rules; consequences for violating those rules; and their rights if charged with a rule violation.

67.    **Due Process Procedures**.  If a Youth is charged with a major violation of LCJDC rules, the Youth shall:

   a.    Receive a written notice of the alleged violation within twenty-four (24) hours prior to a hearing;

   b.    Receive a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken; and

   c.    Unless the Facility director deems it unsafe to do so, have the opportunity to present witnesses and evidence at an evidentiary hearing.

68.    **Due Process for Isolation**.   Youth who are placed in administrative isolation for behavioral reasons shall be provided with a due process hearing every twenty-four (24) hours any time their isolation exceeds twenty-four (24) hours.   Youth placed in disciplinary isolation shall receive a due process hearing prior to being sent to disciplinary isolation.

69.    **Grievance Coordinator**.  LCJDC shall designate one or more Staff members, other than the Facility director, to serve as the Facility's grievance coordinator.  The grievance coordinator shall retrieve grievances daily and shall be the only Staff member to retrieve and review grievances.  The grievance coordinator will also investigate and respond to grievances.  The grievance coordinator shall track, categorize, and tabulate all grievances every thirty (30) days.

70.    **Grievance Process**.  LCJDC shall develop a written grievance process and shall ensure that each Youth has regular access to the grievance system.  LCJDC shall adopt and implement procedures by which Youth or the Youth's parent(s) and legal guardian(s) or legal counsel on the Youth's behalf can obtain and submit grievance forms confidentially and without having to involve Facility Staff.  To facilitate this process, Staff shall:

   a.    Provide each Youth with a grievance form during the intake process;

   b.    Ensure that Youth may submit grievances confidentially in a locked grievance box without having to consult a Staff member;

    **c.**    Ensure that the grievance box is located in a neutral location, such as the classroom or community room; and

    **d.**    Maintain blank grievance forms in classrooms, or in another easily accessible location.

71.    **Response to Grievances**.  Within five (5) days of receipt, the grievance coordinator shall review and address all grievances.  In that time, Youth shall be notified of the final resolution of the Youth's grievances and shall be provided with written notification of the final resolution.  The Facility director shall take appropriate action to address all valid grievances.  All responses, including a copy of the original grievance and all action taken in response to the grievance, shall be maintained in the Youth's file.

72.    **Appeals**.  Each Youth or the Youth's parent(s), legal guardian(s) or legal counsel shall have the opportunity to appeal the grievance findings to the Facility director.  The Facility director shall investigate all appeals and provide written documentation of the resolution within five (5) days of receipt.  The Facility director shall take appropriate action to address all valid appeals.

73.    **Quality Assurance**.  The Facility director shall interview 20% of the Facility population each month to ensure that all Youth interviewed understand how to use the grievance process and are able to obtain grievance forms confidentially.  Following this review, the Facility director shall take all corrective action necessary to ensure that Youth are given access to the grievance process in accordance with the terms of this Agreement.  Findings of all Youth interviewed, and all corrective action, shall be documented and available for review.

**H.**    **Incident Reporting and Investigations**

A proper incident reporting and investigative process ensures that Youth have the opportunity for rehabilitation in a safe environment.  These provisions ensure that Youth are protected from potential dangers within the Facility posed by the Youth himself or herself, by other Youth and by Staff by ensuring that such incidents are properly and thoroughly reported and investigated.

74.    **Mandatory Reporting**.  All Staff shall report any incidents requiring medical attention to the Facility director as soon as reasonably possible, but not later than the end of the shift during which the incident occurred.  All Staff shall report Serious Incidents to the Facility director immediately upon discovery.  The Facility director shall report all required incidents to the Mississippi Department of Human Services for review.

75.    **Investigations**.  All Serious Incidents and other incidents at the discretion of the Facility director shall be investigated by individuals who have no involvement in the underlying event.  Each investigation shall include the following:

    **a.**    A review of all relevant facts, including when, where, and under what circumstances the incident occurred, and who participated in or witnessed the incident;

b. Interviews of all individuals involved in the incident. The interviews shall be conducted within twelve (12) hours of the incident. A summary of all interviews shall be included in the report;

c. Written statements from any Staff involved in the incident, and all Staff who witnessed the incident. All written statements shall be received before those involved leave the Facility;

d. Review of all physical evidence (e.g., video tapes, rape kits, photographs of injuries, clothing, etc.);

e. A summary of all steps taken during the investigation; and

f. Identification of any training needs or corrective measures to avoid similar future incidents.

76. **Investigation Policy**. Within thirty (30) days of the Effective Date, LCJDC shall promulgate a policy to ensure that individuals who may be subject to criminal prosecution as a result of statements provided during LCJDC investigations are timely advised of their rights and are not compelled to give additional statements against their interests unless LCJDC has consulted with the appropriate prosecutorial officials.

77. **Investigation Report**. All investigations shall be completed within thirty (30) days and if reasonably feasible prior to the time the Youth involved is released from the Facility and shall be documented in a report. The results of the investigation shall be compiled in an investigation packet and maintained by LCJDC.

78. **Supervisory Review**. Before the end of each shift, a shift supervisor shall review each investigation packet generated during his or her shift to ensure that each report meets all of the requirements of the incident report policies and content requirements, and that witness statements have been completed consistent with this Agreement's requirements.

79. **Investigative Review**. The Facility director shall designate a Staff member to review each investigative report. When available, and if not already provided, the reviewer shall review independent information to corroborate the report. Once all information has been reviewed, the reviewer should determine whether different decisions or choices could have prevented the incident from occurring. The reviewer's written analysis of these issues must be added to the investigation packet.

80. **Performance Measure**. Every month, on or before the tenth (10th) day of the month, the Facility director shall review the investigation packets for all incidents occurring during the preceding month and provide feedback to Staff to ensure that investigations meet the requirements of this subsection. Such review, and the monthly compliance rate, shall be documented.

81. **Incident Investigation Policies and Procedures**. Within six (6) months after the Effective Date, the Facility shall develop a policy outlining the specific incidents that

require a comprehensive investigation. The policy shall provide for the investigation of at least the following types of incidents:

**a.** Use of Force;

**b.** Youth-on-Staff violence;

**c.** Youth-on-Youth violence;

**d.** Allegations of child abuse or neglect, including allegations of inappropriate relationships between Youth and Staff and other allegations of Staff misconduct; and

**e.** Suicidal behavior, including gestures or attempts.

This policy shall be submitted, reviewed, adopted and implemented in accordance with the provisions of Sections 27 and 28 above.

82. **Quality Assurance**. Each month, LCJDC shall aggregate and analyze all data regarding incidents occurring at the Facility. Monthly statistics shall be assembled to allow assessment of changes over time. The Facility director shall review all investigations to ensure that all investigation procedures are properly followed, and provide monthly feedback to Staff to ensure that these procedures are followed. Each monthly report shall include:

**a.** Relevant aggregate data;

**b.** Trends and/or patterns that appear to contribute to the incident's occurrence;

**c.** Specific interventions that have been or will be implemented in response to the underlying conditions that may have contributed to the incident's occurrence;

**d.** Status reports on the effectiveness of interventions undertaken in response to trends identified in previous months; and

**e.** Staff cited or disciplined for violating the Incident Reporting policies.

83. **Facility Director Review**. Each month, not later than the tenth (10th) day of the next month, the Facility director shall review all classification, Isolation, suicide, investigation, and grievance data for the subject month. The Facility director shall ensure that all data is maintained consistent with the requirements of this Agreement. In the event that discrepancies are identified, the Facility director shall take appropriate action, including any action necessary to ensure Facility Staff compliance, within fifteen (15) days.

## I. Medical Care

The provisions below are designed to ensure that Youth at LCJDC receive Constitutionally adequate medical care and are protected against harm or risk of harm from undiagnosed and untreated medical conditions. These provisions are consistent with Miss. Code Ann. §43-21-321(k) and (l), which require that Youth be provided access to medical care and treatment while in custody.

84. **Medical Screenings**. In complying with the Youth screening requirements, the Staff member conducting the intake screening shall contemporaneously sign and date the screening form, and a copy of the form shall be maintained in the Youth's file. Each Youth for whom screening indicates a need for medical attention, including Youth requiring routine, urgent or emergency care, shall be referred to a licensed medical professional for needed medical services. Documentation of the referral shall be included in the Youth's file.

85. **Sick Call**. LCJDC shall develop a written sick call process that clearly outlines how Youth should access medical and dental services. All Youth requesting sick call shall see a health professional within 24 hours. Responses to sick call request shall be documented in the Youth's file.

86. **Medical Services**. LCJDC will continue to contract with at least one registered nurse to provide medical care and transport Youth to a hospital emergency room for urgent care. Within six (6) months of the Effective Date, LCJDC will contract with a physician to provide on-call routine medical care.

87. **Medicine Administration**. LCJDC shall ensure that only licensed, authorized, properly trained Staff members, QMHPs or Qualified Medical Professionals administer medication to Youth consistent with Mississippi law.

88. **Medical and Mental Health Care Policies and Procedures**. Within sixty (60) days of the Effective Date, LCJDC shall review and revise all mental health and medical policies to:

   a. Require the administration, by trained Staff, of adequate medical and mental health screenings of all newly admitted Youth;

   b. Address the role of Qualified Medical Professionals in supervising medical and mental health care at the Facility, and address how Qualified Medical Professionals shall comply with state and federal regulations regarding procuring, prescribing, dispensing, administering and disposing of pharmaceuticals; and

   c. Require that Youth have reasonable and appropriate access to medical, mental health, and dental emergency care services on a 24-hour per day basis.

89. **Quality Assurance**. Each month, on or before the tenth (10th) day of the next month, the Facility director shall review the medical and mental health intake screenings during that month to determine that the screenings and medicine administration have been conducted

in accordance with the terms of this Agreement. The Facility director shall also ensure, through Facility documentation, that all Youth at the Facility receive a full health assessment soon after, but no later than seven (7) days after admission.

## J. Sanitation and Fire Safety

These provisions are designed to ensure that Youth detained at LCJDC are not unduly subjected to sanitation and environmental health conditions that may negatively affect their health.

90. **Sanitation and Maintenance of Facility**. Within ninety (90) days after the Effective Date, LCJDC shall revise and implement routine written sanitation plans to ensure the proper routine cleaning of housing, kitchen, recreation, and education areas. LCJDC shall also implement a preventive maintenance plan to respond to routine and emergency maintenance needs.

91. **Fire Safety and Emergency Planning**. Within ninety (90) days after the Effective Date, LCJDC shall develop and implement plans to prepare for fires and other emergencies, including modifying the current evacuation plan to ensure safe egress during emergencies.

## K. Security Staffing

92. **Security Staffing**. LCJDC shall maintain sufficient security staffing to protect Youth from harm. LCJDC shall submit a staffing plan to the DOJ within six (6) months of the Effective Date.

## L. Education

93. **The LCJDC School**. The Parties enter into this Agreement with the understanding that as of the Effective Date, the State of Mississippi is providing education services for Youth confined at LCJDC pursuant to the Mississippi Department of Education's September 16, 2013 take-over of the Leflore County School District. The Parties further understand that the Leflore County Board of Supervisors represents that it has no role in providing education services at the Facility as of the Effective Date. The Parties further understand that the State of Mississippi may surrender control of the LCJDC school during the time this Agreement is in effect. If the Leflore County Board of Supervisors becomes involved in the education of children with disabilities at LCJDC during the time this Agreement is in effect, the Parties will confer within thirty (30) days of the surrender to determine what provisions, if any, regarding education should be added to this Agreement. Within thirty (30) days of the conference, the Parties will jointly propose to the Court modifications to this Agreement regarding education services. If the Parties cannot agree on modifications to this Agreement, either the DOJ and/or LCJDC may propose to the Court modifications of this Agreement regarding education services within sixty (60) days of the Parties' conference for approval and adoption by the Court.

### III.     TRAINING

Training is an essential tool to ensure that facility staff are effectively implementing facility policies and procedures in a manner consistent with this Agreement.

94.     **Staff Training**.  Staff shall receive the following training:

    **a.**     **Intake Screening**.  Within seven (7) days after the revised intake screening questionnaire is finalized, all intake Staff shall receive training on its use.

    **b.**     **Use of Force**.  Within ninety (90) days of receiving final approval of policies and procedures from the DOJ, all Staff shall receive a minimum of eight hours of competency-based training on the approved Use Of Force curriculum (including the use of verbal de-escalation, physical and Restraints) and two hours of annual refresher training. Both training sessions must include a component in which Staff's ability to properly and safely implement each physical restraint technique is assessed by a qualified trainer.  Detention Staff shall be trained in non-physical, verbal interventions to de-escalate potential aggression from Youth.

    **c.**     **Behavior Management**.  Within ninety (90) days of receiving final approval of policies and procedures from the DOJ, all Staff shall receive a minimum of eight hours of competency-based training on the approved behavior management curriculum and two hours of annual refresher training.  Both training sessions must include a component in which detention Staff shall be trained in non-physical, verbal interventions to de-escalate potential aggression from Youth.

    **d.**     **Suicide prevention**.  Within nine (9) months of the Effective Date, all Staff shall receive a minimum of eight hours of competency-based training on suicide prevention, including the environmental risk factors for suicide, individually predisposing factors, high-risk periods for incarcerated Youth, warning signs and symptoms, known sources of stress to potentially suicidal Youth, the specific risks posed, and coping mechanisms or activities that may help to mitigate the risk of harm.   The training shall also cover the Facility's suicide prevention procedures, liability issues, a discussion of recent suicide attempts at the Facility, searches of Youth who are placed on Suicide Precautions, mock demonstrations regarding the proper response to a suicide attempt, the proper assessment of intake screening forms for signs of suicidal ideation, avoiding obstacles to suicide prevention, and the use of suicide rescue tools.  Each Staff member shall receive four hours of annual refresher training on these same topics.  All Staff shall be certified in CPR and first aid.  LCJDC shall review and, if necessary, revise the suicide prevention training curriculum to incorporate the requirements of this paragraph.

    **e.**     **Incident reporting**.  Within sixty (60) days of receiving final approval of policies and procedures from the DOJ, all Staff shall receive a minimum of four hours of competency-based training on the Incident Reporting Policy and the specific

requirements for timely, accurate, and complete reporting for each incident category and two hours of annual refresher training.

    **f.**    **Child abuse reporting**.  Within sixty (60) days of receiving final approval of policies and procedures from the DOJ, all Staff shall receive a minimum of two hours of competency-based training for all Staff on the identification and prevention of custodial misconduct, including physical and sexual abuse, including appropriate reporting and non-retaliation requirements, and one hour of annual refresher training.

    **g.**    **Medical**.  Within sixty (60) days of receiving final approval of policies and procedures from the DOJ, all Staff completing medical screenings must be trained on any medical screening assessment instrument.  Documentation of their training must be on file at the Facility for review.

95.    **Mental Health Screening**.  Any Staff member using the MAYSI-2 to screen Youth for potential mental health needs shall be trained to administer this tool within thirty (30) days of the Effective Date.

## IV.    REPORTING REQUIREMENTS

96.    **Comprehensive Action Plan**.  Within two (2) months of the Effective Date, LCJDC shall submit to the United States a comprehensive action plan specifying the measures the County intends to take in order to bring LCJDC into compliance with the substantive requirements of the Agreement, including anticipated timeframes for completion of each measure.  The comprehensive action plan shall include all outside technical assistance and training that will be sought and utilized by Leflore County in order to bring LCJDC into compliance with the substantive requirements of the Agreement.

97.    **Compliance Report**.  LCJDC shall submit a semi-annual compliance report to the United States, the first of which shall be filed within three (3) months of the Effective Date.  Each semi-annual compliance report submitted by LCJDC shall describe the actions LCJDC has taken during the reporting period to implement this Agreement and shall make specific reference to the Agreement provisions being implemented.  To the extent any provision of this Agreement has not been implemented and is not being implemented, the compliance report shall also describe what actions, including any additional revisions to policies, procedures and practices, LCJDC will take to ensure implementation, and the date(s) by which those actions will be taken.

98.    **Records**.  LCJDC shall maintain sufficient records to document that the requirements of this Agreement are being properly implemented.

## V.    IMPLEMENTATION

99.    **Implementation**.  LCJDC shall begin implementing this Agreement immediately upon the Effective Date.  LCJDC shall implement all reforms necessary to effectuate this Agreement within twelve (12) months of the Effective Date.  If LCJDC cannot fully

implement the reforms required by this Agreement within the allotted time, LCJDC shall notify the DOJ in writing.

100. **Alternative Community Placements**. Leflore County shall actively explore the development and utilization of alternative community placements for Youth at LCJDC, particularly for Youth with medical or mental health needs that cannot be readily met at LCJDC.

101. **Notification**. Within two (2) weeks of the Effective Date, LCJDC shall communicate the provisions set forth in this Agreement to officials, employees, agents, and independent contractors who are involved in providing care to the Youth confined at the Facility.

102. **Obligation to Seek Technical Assistance**. Leflore County and LCJDC commit to seek technical assistance and training to effectuate its obligations under this Agreement. At a minimum, Leflore County and LCJDC will seek out technical assistance on: developing and utilizing alternatives to detention for Youth whose needs cannot readily be met at LCJDC; policy and procedure development; behavior management; use of Isolation; suicide prevention; quality assurance; incident reporting and investigation; and Staff training. At a minimum, Leflore County and LCJDC will explore the receipt of technical assistance from the Office of Juvenile Justice and Delinquency Prevention and from the Annie E. Casey Foundation Juvenile Detention Alternatives Initiative. DOJ will assist Leflore County and LCJDC in facilitating contacts with potential technical assistance providers.

103. **Resolution of Direct Conflict with Forthcoming Statewide Standards.** The Parties understand that the state of Mississippi is in the process of revising its Statewide Detention Center Standards pursuant to recommendations of the Juvenile Detention and Alternatives Task Force. In the event that the state of Mississippi adopts statewide requirements pursuant to the Task Force's recommendations that directly conflict with this Agreement, Leflore County will notify DOJ within ten (10) calendar days. The Parties will confer in an effort to resolve the matter for up to fourteen (14) calendar days from the date of Leflore County's notice to DOJ. If the Parties cannot agree on whether or how to revise the Agreement, the Parties shall seek a resolution from the Court within thirty (30) calendar days of the date of Leflore County's notice to DOJ.

104. **DOJ's Access to Facility and Records**. To assess LCJDC's implementation of each substantive provision of this Agreement, the DOJ will regularly conduct compliance reviews to ensure LCJDC's implementation of this Agreement.

    a. The first compliance review will be conducted upon reasonable notice to LCJDC approximately sixty (60) days following the Effective Date. Thereafter, periodic compliance reviews will be conducted upon reasonable notice by the DOJ until this Agreement is terminated. Such routine compliance reviews will assess LCJDC's compliance with each of the substantive remedial measures set forth above. DOJ shall consult with LCJDC to schedule mutually acceptable dates for the compliance reviews.

      **b.**      DOJ may determine that additional compliance reviews are necessary due to emergent issues at the Facility. If the DOJ believes that such additional compliance reviews are necessary, the DOJ shall consult with LCJDC to schedule mutually acceptable dates for such additional compliance reviews.

      **c.**      For the purpose of ascertaining compliance with this Agreement and in fulfillment of its law enforcement and oversight functions, the DOJ shall have reasonable access to: Leflore County officials, the buildings and grounds of the Facility; Facility documents and records; Facility officials, employees, agents, and independent contractors; officials, employees, agents, and independent contractors; and Youth residing at the Facility, including the right to meet with Youth privately. Such access shall continue until this Agreement is terminated in accordance with the termination provisions herein.

      **d.**      Within ninety (90) days after each compliance review, the DOJ shall provide written evaluation of LCJDC's compliance.

105.    **Settlement Agreement Coordinator**. LCJDC shall create the position of settlement agreement coordinator, whose duties shall include:

      **a.**      Develop reports regarding compliance with this Agreement and provide such reports to the DOJ every six (6) months until this Agreement is terminated. The first report shall be provided three (3) months after the Effective Date.

      **b.**      Provide to the DOJ the raw data upon which each compliance report is based, any reports prepared by LCJDC's technical consultants regarding compliance with this Agreement, and any other reports routinely submitted to the Settlement Agreement Coordinator regarding compliance with this Agreement.

106.    **Document Development and Revision**. LCJDC shall timely revise, and/or develop, policies and procedures, forms, screening tools, blank log forms, and other documents as necessary to ensure that they are consistent with, incorporate, address, and implement all provisions of this Agreement.

107.    **Document Approval by DOJ**. Within ninety (90) days of its receipt of the policies, procedures and other written documents, the DOJ shall provide either written approval of each document, or written concerns or objections it has to the documents that include proposed revisions. Such approval shall not be unreasonably withheld or delayed. If the DOJ does not provide written approval or concerns regarding a document within thirty (30) days of receipt, the document shall be considered approved. LCJDC shall formally adopt and begin implementation of any approved policies, procedures and other written documents within thirty (30) days of DOJ's final approval. In the event that the United States asserts that policies, procedures, or other written documents are not in compliance with the terms of this Agreement, the Parties will confer on the matter for up to thirty (30) days. If it is ultimately determined by the Parties that revisions are required in order to make such policies consistent with this Agreement, the Parties shall within ten (10) days agree to a schedule for LCJDC to submit revisions.

108. **Response to Questions**.  Within thirty (30) days of the receipt of written questions from the United States regarding LCJDC's compliance with this Agreement, LCJDC shall provide the DOJ with written answers and access to any requested documents regarding LCJDC's compliance with the requirements of this Agreement.  If LCJDC objects to DOJ's request, the parties shall confer in good faith to resolve the objection within thirty (30) days.  If the Parties are unable to resolve the objection, either Party may submit a Motion to the Court outlining the disagreement and seeking the Court's resolution of the disagreement.

109. **Notification to the United States of Incidents**.  LCJDC shall notify the DOJ no later than one (1) business day after LCJDC becomes aware of any Youth death or any Youth injury resulting in transport of the Youth to the emergency room or requiring hospitalization.

   a. LCJDC shall timely forward to the DOJ copies of all incident reports and final reports of investigations related to such incidents, as well as any autopsies, mortality reviews, and death summaries.

   b. For the purposes of this provision, the requirement to notify the United States is met when LCJDC contacts at least one of the DOJ Special Litigation Section trial attorneys assigned to this matter.  On or before the Effective Date of this Agreement, the Special Litigation Section of DOJ will provide LCJDC with the name of the trial attorney to whom notification should be sent, and will update LCJDC when the identified trial attorney contact changes. If the Special Litigation Section of DOJ does not provide a trial attorney contact to LCJDC, the required notification under this Section shall be given to the United States Attorney for the Northern District of Mississippi.

## VI.  ENFORCEMENT AND TERMINATION

110. **Notice Prior to Judicial Action**.  With the exception of conditions or practices that pose an immediate and serious threat to the life, health, or safety of Youth, if the United States believes that LCJDC has failed to substantially comply with any obligation under this Agreement, the United States shall give not less than thirty (30) days written notice of the failure prior to seeking judicial enforcement of the Agreement.  The Parties agree to work in good faith to resolve any issues which may arise regarding the County's compliance with this Agreement prior to bringing the issue to the Court.

111. **Termination**.   This Agreement shall terminate in accordance with the following provisions:

   a. This Agreement shall terminate when Leflore County has achieved substantial compliance with all substantive provisions of this Agreement and has maintained that substantial compliance for twelve (12) consecutive months.

   b. Leflore County may, at any time during the term of this Agreement, request that the United States certify that LCJDC has maintained substantial compliance with

all provisions of this Agreement for twelve (12) consecutive months. If the DOJ so certifies, this Agreement will terminate in its entirety.

**c.**     Noncompliance with mere technicalities, or temporary failure to comply during a period of otherwise sustained compliance, shall not constitute failure by LCJDC to maintain substantial compliance. However, intermittent compliance during a period of sustained noncompliance shall not constitute substantial compliance. The DOJ, in its good faith discretion, will determine whether LCJDC has maintained substantial compliance for the one year period and any finding of substantial compliance may not be unreasonably withheld, delayed or conditioned.

**d.**     Subsections of this Agreement pertaining to specific subject matter areas may be terminated separately and independently from the provisions of the Agreement that have not yet reached substantial compliance, if LCJDC maintains substantial compliance in these areas for a period of one year.

**e.**     Leflore County, through its Board of Supervisors, may, at any time, terminate operation of the LCJDC and in the event of such termination of the operation of the LCJDC and upon termination of the operation of the LCJDC any obligations under this Agreement shall terminate. Leflore County shall give the DOJ at least thirty (30) days written notice of the termination of the LCJDC and the resulting termination of this Agreement. The written notice shall include the planned date of LCJDC's termination of operations and arrangements for the relocation of each Youth remaining at LCJDC when operations terminate.

## VII.  GENERAL PROVISIONS

112.  **Successors.**  This Agreement shall be binding on all successors, assignees, employees, agents, contractors, and all others working for or on behalf of Leflore County, provided that this Agreement shall be binding on successors of public officials consistent with Miss. Ann. Code §§ 19-3-40 & 25-1-47.

113.  **Non-retaliation**.  Leflore County agrees that it shall not retaliate against any person because that person has provided any information or assistance to the United States, has filed or will file a complaint, or has participated in any other manner in an investigation or proceeding relating to this Agreement. Leflore County agrees that it shall timely and thoroughly investigate any allegations of retaliation in violation of this Agreement and take corrective actions identified through such investigations.

114.  **Notice**.  "Notice" under this Agreement shall be provided by electronic mail and overnight delivery and shall be provided to counsel for Leflore County and counsel for the United States.

115.  **Notification of Unforeseen Circumstances**.  If any unforeseen circumstance occurs that causes a failure to timely carry-out any requirements of this Agreement, Leflore County shall notify the DOJ in writing within twenty (20) calendar days after Leflore County becomes aware of the unforeseen circumstance and its impact on Leflore County's ability

to perform under the Agreement. The notice shall describe the cause of the failure to perform and the measures taken to prevent or minimize the failure. Leflore County shall implement all reasonable measures to avoid or minimize any such failure.

116. **Severability**. In the event that any provision of this Agreement is declared invalid for any reason by a court of competent jurisdiction, said finding shall not affect the remaining provisions of this Agreement.

117. **Release of Litigation Holds**. All Parties agree that, as of the date of entry of this Agreement, litigation is not "reasonably foreseeable" concerning the matters described in this Agreement. To the extent that either Party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in this Agreement, the Party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any part of any other obligations imposed by this Agreement, including the document creation and retention requirements described above.

SO ORDERED this 18th day of June, 2015.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**

FOR THE UNITED STATES:

FELICIA C. ADAMS
United States Attorney
Northern District of Mississippi

RALPH M. DEAN, III
Assistant United States Attorney
U.S. Attorney's Office
Northern District of Mississippi
Ethridge Building
900 Jefferson Ave.
Oxford, MS 38655
(662) 234-3351 (T)
(662) 234-3318 (F)
Ralph.Dean@usdoj.gov

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

MARK J. KAPPELHOFF
Deputy Assistant Attorney General

JUDY C. PRESTON
Acting Chief
Special Litigation Section

SHELLEY R. JACKSON
Deputy Chief
Special Litigation Section

/s/ Cynthia Coe
CYNTHIA COE
Trial Attorney
Civil Rights Division
U.S. Department of Justice

950 Pennsylvania Avenue, NW – PHB
Washington, DC  20530
Telephone:  202-353-1121
Facsimile:  202-514-6273
cynthia.coe@usdoj.gov

FOR LEFLORE COUNTY:

*/s/Joyce I. Chiles*
JOYCE I. CHILES
Attorney for the Leflore County
Board of Supervisors
P.O. Box 250
Greenwood, Mississippi 38935
(662) 453-1089 (T)
joyce_chiles@yahoo.com